## RICHARD INCE *vs.* EAST BOSTON FERRY COMPANY.

The distance between two ferry slips on opposite sides of Boston harbor was from a quarter to three eighths of a mile, and a steam ferry boat left each slip for the other every five or six minutes, consuming nearly that time in the passage. Two men, one a sailor, and both of them used to manage sail boats and familiar with the harbor and the times and manner of running the ferry boats, were navigating a sail boat at right angles across the track of the ferry, about midway between the slips, one of them being forward and the other aft, when a ferry boat ran into them and upset their boat. There was nothing between them and this ferry boat to obstruct their view of it during the whole of its approach from the slip, and the one aft saw it when it left the slip, but from that time till an instant before the collision neither of them saw it or looked towards it, and the one forward did not think of the fact that they were in the usual track of the ferry boats, although during part of the interval they were engaged in luffing to avoid collision with the other ferry boat, which both of them had seen approach from the other slip. *Held,* in an action brought by the one forward against the proprietors of the ferry to recover for his injuries in the collision as caused by their negligence, that he and his companion were *guilty of contributory negligence, and he could not recover.*

TORT for personal injuries sustained by the plaintiff in a collision of the defendants' steam ferry boat with a sail boat in the harbor of Boston, on October 16, 1868, alleged to have been caused by the defendants' negligence. The answer alleged negligence on the part of the plaintiff.

At the trial in the superior court, before *Reed,* J., the plaintiff's evidence tended to show " that the plaintiff, at the time of the collision, was in a Whitehall boat, eighteen feet long, arranged for oars and sails and then under sail, belonging to his step-son, Columbus Barry, who was also on board, and who, with the plaintiff, was in charge of the boat; that the plaintiff had for a long time been a sailor, and accustomed to manage sail boats, and Barry also was acquainted with their management, and both he and Barry were well acquainted with the harbor, its tides, currents and localities, and knew well the slips on the Boston and East Boston sides for the defendants' ferry boats, and the track of said boats between the two slips, and that the distance between them was about from one quarter to three eighths of a mile, and that two steamboats ran on the route, each making its trips once in five or six minutes; that they started in the sail boat from the foot of Summer Street in Boston, bound for Chelsea, and with

their sails up, and by rowing, went along near the ends of the wharves until opposite the end of Long Wharf; that from there they sailed out part way across the channel, until rather more than half way across, and then changed their course and ran in the eye of the wind toward Chelsea, in a course leading at right angles across the usual track of the defendants' ferry boats; that the wind, which was not strong, was about north, and the tide was running swiftly out; that the plaintiff was in the forward part of the boat, having then the care of the sail, and Barry was in the stern, steering, and having care of the mainsail; that, as they were about to cross the usual track of the defendants' ferry boats, and the line between their slips on the Boston and East Boston sides, the ferry boat coming from East Boston to Boston, which the plaintiff and Barry had seen leave its slip, passed in front of them, they, seeing that they could not pass it, luffing up and keeping their sails shaking, to let it pass; that before this time Barry had seen the ferry boat which ran into them leaving its slip in Boston for East Boston; that from the time said boat left Boston till it struck them, there was nothing, as the plaintiff and Barry were situated in their boat, to obstruct their view of it, and there was nothing to prevent those in charge of it from seeing the sail boat; that after the first named ferry boat passed them the breeze freshened a little, and the sail boat resumed its course, heading as before mentioned, properly having its sails close-hauled, and neither the plaintiff nor Barry looking toward nor seeing the before named ferry boat approaching from Boston; that the rate of speed of the sail boat was very slow, they then making about fifty feet headway in five minutes; that the plaintiff did not think, at the time, of the fact that he was in the usual track of said ferry boats; that neither the plaintiff nor Barry saw the ferry boat which left Boston, after it so left, as before stated, until it was within fifteen to thirty feet of them, the attention of both being directed to their sails, when their attention was called to their danger by a shout from the first named ferry boat, and a shout at about the same time from the one approaching; that it was then too late to get out of the way, but the plaintiff by an oar and by other means tried to fend off; that the ferry

boat struck the sail boat at nearly a right angle, a little aft the mast, and, the mast of the sail boat catching on the guard of the ferry boat, capsized the sail boat on the starboard side of the ferry boat, thus doing the injury complained of; that when the ferry boat from East Boston passed the bows of the sail boat it was about one hundred feet off from the sail boat, and farther up stream than the ferry boat from Boston; that the courses of the two ferry boats were in direction opposite to each other, and on lines nearly parallel; and that the colliding ferry boat did not deviate from its course, nor whistle, nor stop its paddles, till about the time of the shouts before named, and was still in forward motion when it struck the sail boat."

Upon this evidence, when the plaintiff rested his case, the judge ruled, at the request of the defendants, that the plaintiff was negligent and the action could not be maintained; directed a verdict for the defendants; and reported the case to this court.

*R. M. Morse, Jr., & T. H. Tyndale,* for the plaintiff, on the question of the plaintiff's care, cited articles 15–19 of the rules of navigation prescribed by the U. S. St. of 1864, *c.* 69, § 1; 13 U. S. Sts. at Large, 58, 60, 61; and argued that, either by these rules, or independently of them, due care on the part of the plaintiff and Barry required them to keep the sail boat on its course, having regard, however, to any special circumstances rendering a departure necessary to avoid immediate danger; that the plaintiff's evidence showed that the sail boat was so navigated; that the fact that neither the plaintiff nor Barry saw the ferry boat which left Boston, from the time it left till it was within fifteen to thirty feet of them, cannot be held as matter of law to be contributory negligence, for the entire time consumed in the ordinary passage of the ferry boat from slip to slip was from five to six minutes, and the collision took place rather more than half way across, so that the ferry boat had not occupied more than three minutes, probably, from the time of leaving the slip, when they saw it, to the time of reaching the place where they saw it again, and they were busy meanwhile in attending to their sails and preventing a collision with the first ferry boat; but that it was immaterial whether or not they were looking towards the ferry boat, if in

fact they were sailing their boat in accordance with the rules of navigation ; and at all events, that the question was for the jury.

*F. E. Parker*, for the defendants.

GRAY, J. The evidence introduced at the trial tended to show that the plaintiff and the other man in charge with him of his boat were well acquainted with the harbor, and knew the situation of the defendants' docks or slips, and the usual track between them of the ferry boats, each of which ran every five or six minutes ; that the plaintiff's boat, while crossing the usual track of the ferry boats about midway at right angles, was struck by one of the ferry boats and upset ; that the plaintiff at the time did not think of the fact that he was in the usual track of the ferry boats ; that his companion, who was at the helm and had the care of the main sail, had seen this ferry boat at the time of its leaving the slip, at least an eighth of a mile off ; that from that time until the collision there was nothing to obstruct their view of this boat, and yet neither of them saw or looked towards it after it left the slip. No evidence was offered, which tended to control this. The unavoidable inference is, that the omission of the plaintiff and his companion, under the circumstances, to look in the direction in which they had reason to believe that a ferry boat might be, and knew that one actually was, approaching, was negligence which contributed to the accident ; and therefore neither of them can maintain an action at law for the injury resulting therefrom, against the owners of the other boat, whatever may have been the negligence in its management.

*Judgment on the verdict.*